**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4105

_____

MELVIN KEITH RICHARDSON,
                                      Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:07-cv-02065)
District Judge: Honorable Petrese B. Tucker
_____

Argued April 26, 2018

Before: JORDAN, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: October 2, 2018)
_____

Leigh M. Skipper, Chief Federal Defender
Brett G. Sweitzer, Assistant Federal Defender &
Chief of Appeals
Keith M. Donoghue, Assistant Federal Defender [ARGUED]
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
    *Counsel for Appellant*

Josh Shapiro, Attorney General
Jennifer C. Selber, Director, Criminal Law Division
James P. Barker, Chief Deputy Attorney General
Jennifer A. Buck, Senior Deputy Attorney General [AR-
GUED]
Office of Attorney General of Pennsylvania
Appeals & Legal Services
Strawberry Square
16th Floor
Harrisburg, PA 17120
    *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Melvin Richardson was denied counsel for part of his state-court sentencing. But neither his post-sentencing lawyer nor his state-habeas lawyer challenged that denial of counsel. Now,

on federal habeas, he seeks to challenge his post-sentencing lawyer's ineffectiveness.

To do so, he has to overcome both lawyers' failures. He must attack his post-sentencing lawyer's failure to raise the denial of counsel as itself a denial of effective counsel. But he can do that only if he had a right to counsel at the post-sentencing stage. And, before attacking his post-sentencing counsel, he must attack his post-conviction-relief (state-habeas) lawyer's failure under *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012). But he can do that only if his post-sentencing lawyer was acting as trial counsel, rather than appellate counsel.

We announce two holdings today: First, in Pennsylvania state court, the post-sentencing-motions stage is a critical stage at which a defendant is entitled to the effective assistance of counsel. Richardson was denied that right because his post-sentencing lawyer was ineffective.

Second, the line dividing trial from appeal falls naturally at the notice of appeal. Post-sentencing motions precede the notice of appeal, so they fall on the trial side of the line. Thus, when a state-habeas lawyer fails to raise a post-sentencing lawyer's ineffectiveness, the prisoner may raise that issue for the first time in his federal habeas petition. So Richardson's ineffective-assistance-of-counsel claim is properly before us, and it is meritorious. We will thus remand for the District Court to grant the writ of habeas corpus and order a new sentencing hearing.

## I. BACKGROUND

### A. Pennsylvania State Court

In 2003, Richardson and his son burgled two empty homes and fled from police. During a high-speed car chase, he rammed into a police car and crashed into a utility pole. He was prosecuted in the Court of Common Pleas of Chester County, Pennsylvania. A jury convicted him of burglary, criminal conspiracy, theft, aggravated assault, resisting arrest, and flight from a police officer.

Mid-sentencing, Richardson decided that he was dissatisfied with his lawyer and sought to fire him. The sentencing judge treated Richardson's request as waiving his right to counsel. But the judge did not, as the Sixth Amendment requires, question Richardson to ensure that his waiver was knowing and voluntary. And Richardson's post-sentencing and state-habeas lawyers both overlooked this error.

1. *Joseph Green, Jr. (Trial and First Day of Sentencing).* Richardson hired Joseph Green, Jr., as his lawyer for trial and sentencing. His sentencing took two days. On the first day, Green asked the court to schedule a psychological evaluation and postpone the sentencing hearing. The judge agreed and they reconvened a month later.

At the start of the second day, Green told the court that Richardson had asked him to withdraw as counsel. The prosecution objected to Green's last-minute withdrawal. Richardson replied that he "c[ould] represent [him]self" and that he "fe[lt] that Mr. Green d[id]n't have [his] best interests at heart." App. 305.

The judge asked Richardson no questions about discharging Green. He simply observed: "You have competent counsel, and you will be foolish to terminate his services when he's prepared to proceed." App. 310. The judge then gave an ambiguous instruction: "I'm going to permit Mr. Green to leave, if he wants to leave, or to stay and stand by. But I'm going to proceed to sentence you today." App. 311. At the prosecution's suggestion, the judge purported to "keep [Green] here for now to protect your appellate rights at least." App. 312.

Green later testified that he "d[id]n't know if [the judge had] granted the motion for leave to withdraw or not. … I was present, but I did not conduct [the second day of sentencing]. The extent to which someone or another concludes that I was representing Mr. Richardson is up to them to decide." App. 222. The sentencing transcript gives no hint that Green said or did anything further to protect Richardson's rights.

2. *Pro Se (Second Day of Sentencing)*. The sentencing continued without any more participation by Green. Richardson spoke at length to the court, submitted letters and certificates from his employers, and called his fiancée to testify. The judge reviewed this new information, as well as Green's earlier submissions, and sentenced Richardson to 17½ to 39 years' imprisonment followed by 10 years' probation.

3. *Christian Hoey (Post-Sentencing Motions and Direct Appeal)*. The state court then appointed Christian Hoey to represent Richardson. At that stage, Hoey could file a post-sentencing motion to reconsider Richardson's sentence and then an appeal. Pa. R. Crim. P. 720(A), (B).

5

Hoey never challenged the sentencing judge's failure to conduct a colloquy before letting Richardson proceed pro se. He did move to reconsider Richardson's sentence on other grounds, but the sentencing judge denied that motion. Hoey then appealed the sentence, challenging it as excessive. But the Superior Court affirmed.

4. *Robert Brendza (State Habeas/PCRA)*. Richardson then filed a pro se state-habeas petition under Pennsylvania's Post Conviction Relief Act (PCRA). Richardson's handwritten petition and typed amendment expressly raised two right-to-counsel claims.

First, "[t]he trial Judge erred when he did not secure counsel for the defendant during his sentencing, [d]enying [d]efendant's sixth amendment right to [c]ounsel." App. 387. Richardson argued that, before letting a defendant represent himself, a "judge must conduct a penetrating and comprehensive inquiry of the defendant to ascertain whether he understands the nature of the charges against him, the permissible range of sentences to which he is exposed, the possible defenses to the charges and all the circumstances." App. 399. But "[t]here was never any inquiry into whether the defendant was knowingly and intelligently waiving his right to counsel." *Id.*

Second, Richardson asserted that both his trial and appellate counsel had been ineffective, the latter by not raising arguable claims. App. 387. Richardson did not list the claims that Hoey should have raised, including the denial of counsel at sentencing.

6

The state-habeas court appointed Robert Brendza to represent Richardson. It also returned Richardson's original and amended petition to him, saying that "whatever you needed to say needed to be raised by your attorney." App. 410. The court's instruction comported with Pennsylvania law, which tells courts not to consider *pro se* pleadings filed by parties who are represented by counsel (so-called "hybrid representation"). *Commonwealth v. Reid*, 642 A.2d 453, 462 (Pa. 1994); *Commonwealth v. Ellis*, 626 A.2d 1137, 1140 (Pa. 1993).

Brendza abandoned Richardson's sentencing-counsel claim. Instead, he argued that Richardson's trial and appellate counsel were ineffective for not pursuing an evidentiary issue. But Richardson persisted, and at a hearing the state-habeas court let Richardson articulate his claims of ineffective assistance of trial and appellate counsel and "judicial improprieties during [his] sentencing." App. 412-13. At the court's request, Brendza submitted a letter explaining why he thought Richardson's sentencing-counsel claim was meritless. App. 457.

The state-habeas court denied the petition, rejecting Brendza's claim as meritless. In keeping with Pennsylvania's ban on hybrid representation, the court credited Brendza's letter rejecting Richardson's separate arguments, but did not discuss the sentencing court's failure to question Richardson or the related ineffective-assistance claim. The Superior Court affirmed, and the Supreme Court of Pennsylvania denied leave to appeal.

### B. Federal Habeas

1. *Federal Habeas Petition.* Next, Richardson filed a habeas petition pro se in federal court. He claimed that "Green was ineffective for abandoning [him] during the sentencing phase." App. 54 (Claim I). He also claimed that "[t]he trial court erred by not performing an in depth on the record colloquy when petitioner released his retained counsel during sentencing." *Id.* (Claim J). And he claimed that "[a]ppellate counsel Hoey was ineffective for not performing an independent investigation into the trial record to identify meritable issues for appeal and not briefing them to the court." *Id.* (Claim M). He made the same claim against Brendza for not independently looking for and briefing meritorious issues on state habeas. *Id.* (Claim N).

The magistrate judge recommended denying all claims. The District Court agreed and dismissed the habeas petition. We denied a certificate of appealability.

2. *Rule 60(b) Motion.* Richardson renewed these claims in a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). He argued that in Pennsylvania, defendants cannot raise ineffective-assistance-of-counsel claims until state habeas, when there is no constitutional right to effective counsel. So he requested an evidentiary hearing to develop a record on his Sixth Amendment claims.

The District Court again rejected Richardson's arguments, and we again denied his request for a certificate of appealability. But the U.S. Supreme Court granted certiorari, vacated, and remanded for further consideration in light of *Martinez.*

On remand, the District Court held an evidentiary hearing. The three state-court lawyers relevant to this appeal all testified. As for sentencing, Green testified that he was unsure if the sentencing judge had granted his motion to withdraw from the case. As for post-sentencing motions, Hoey testified that he had reviewed the record and found no errors worthy of appeal. He also testified that he did not recall the issue of the sentencing court's discharging Green and letting Richardson proceed pro se. As for state habeas, Brendza testified that, apart from one evidentiary issue raised in the state-habeas petition, his review of the record had found no other issues that Hoey should have raised.

The District Court again denied Richardson's Rule 60(b) motion, and it is this opinion that we review here. *Richardson v. Piazza*, No. 2:07-cv-2065-PBT, 2015 WL 9273135 (E.D. Pa. Dec. 21, 2015). First, the District Court declined to entertain Richardson's Sixth Amendment claim that the sentencing judge had failed to conduct a colloquy because it did not construe the colloquy claim as an ineffective-assistance-of-counsel claim. *Id.* at *3 n.5.

Second, it reasoned that Green could not have been constitutionally ineffective because Richardson could not prove that the lack of counsel prejudiced him. Because the prosecution presented no more evidence after Green withdrew, "there was nothing left for the trial court to do but impose its sentence." *Id.* at *15.

Third, the District Court rejected the claim against Hoey because it reasoned that *Martinez*'s equitable exception does

9

not extend past trial-counsel ineffectiveness to appellate counsel. *Id.* at \*16.

Finally, it rejected the claim against Brendza. It reasoned that there is no constitutional right to counsel, and so no right to effective counsel, on state habeas. *Id.*

We granted a certificate of appealability on one issue: On state habeas, Brendza failed to raise Hoey's post-sentencing ineffectiveness. Did Brendza's failure to raise this ground for relief excuse Richardson's procedural default? If so, Richardson may now pursue his claim that Hoey was constitutionally ineffective because Hoey failed to argue, in his post-sentencing motion, that Richardson was denied his right to counsel at sentencing. If not, his counsel's procedural default bars this claim.

To answer this claim, we must resolve two subsidiary questions: Did Richardson have a Sixth Amendment right to counsel for his post-sentencing motions? If so, does post-sentencing counsel qualify as trial counsel under *Martinez*? The answer to both questions is yes.

## II. FEDERAL HABEAS BACKGROUND

These questions come to us by way of a federal habeas petition, and for the first time in this case, having gone unaddressed at each stage below. Generally, when a litigant has failed to present his claims to the state court, the procedural-default doctrine bars us from reviewing unpreserved claims. But there are exceptions to this rule.

### A. Procedural default

Federal habeas corpus is a backstop. It lets federal courts review the merits of federal claims in state criminal cases. But federal courts do not sit to review state law. So federal courts will not review federal claims when the state court's decisions are supported by a state-law reason, an "independent and adequate state ground[ ]." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

One such ground is a violation of the state's procedural rules. The federal habeas statute requires state prisoners to exhaust their state remedies before pursuing federal habeas relief. 28 U.S.C. § 2254(b)(1). So when the state court denies a claim because the prisoner failed to comply with a procedural rule, that procedural default normally bars federal courts from rehearing the claim. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

But a federal habeas court may excuse a prisoner's procedural default if the prisoner can show both cause for the default and resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). To show cause, he must explain what prevented him from timely raising the defaulted claim.

Ineffective assistance of counsel is one such cause: an "objective factor external to the defense" that can excuse procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). When the state prosecutes, convicts, and imprisons a defendant, it must ensure that the defendant "ha[s] the Assistance of Counsel for his defence." U.S. Const. amend. VI. If the state

11

provides no lawyer or an ineffective one, it violates that obligation. No state may "conduct trials at which persons who face incarceration must defend themselves without adequate legal assistance." *Murray*, 477 U.S. at 488. If the state violates this rule, its violation is cause to excuse the defendant's procedural default.

### B. Layers of Ineffectiveness

1. *Ineffective lawyers challenging ineffective lawyers.* Sometimes, there are several layers of ineffective lawyering. But when a prisoner has multiple opportunities to challenge an error, each time he fails to do so is a procedural default. And each default must be excused before we will review the merits of his claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

For Richardson, this means that he must first show that Brendza's failure to raise Hoey's ineffectiveness was itself ineffective, thus excusing the default on state habeas. Only then can he go on to show that Hoey's failure to challenge the denial of counsel at sentencing violated the Sixth Amendment.

One twist complicates this labyrinth even more. Pennsylvania instructs inmates to bring ineffective-assistance-of-counsel claims on state habeas, not on direct appeal. *Grant*, 813 A.2d at 737-38. That is because a habeas court is better able to develop the record needed to assess counsel's performance and prejudice. *Id.* at 737. But on state-habeas review, there is no Sixth Amendment right to counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). So even if a state-habeas petitioner has

an ineffective lawyer, or no lawyer at all, the state has not violated the Sixth Amendment.

If not remedied, this would set up a Catch-22: When the prisoner eventually filed a federal habeas petition, he would be told that he could not rely on his state-habeas lawyer's bad lawyering to excuse that procedural default. And that procedural default would then prevent our review of the effectiveness of trial counsel. Thus, "no court [would] review the prisoner's claims." *Martinez*, 566 U.S. at 10-11.

Here, at the second half of sentencing, Richardson had no lawyer. After sentencing, Hoey did not challenge the sentencing judge's failure to question Richardson before letting him proceed pro se. Direct appeal is not the proper forum to challenge Hoey's ineffectiveness in Pennsylvania, so no state court would review these claims until state habeas. On state habeas, Brendza rebuffed Richardson's own efforts to raise these claims. If these failures procedurally barred his claims on federal habeas, no court would ever review them.

2. Martinez*'s equitable exception to procedural default.* To prevent this outcome and preserve claims of trial-counsel ineffectiveness, the Supreme Court carved out a "narrow exception" to procedural default. *Id.* at 9. *Martinez* permits prisoners to bring their claims of ineffective assistance of trial counsel on federal habeas even if their state-habeas counsel failed to raise that claim. *Id.* So even though the right to counsel does not extend to state-habeas proceedings, the lack of effective counsel there does not prevent prisoners from later raising the ineffectiveness of their trial counsel.

*Martinez*'s equitable exception applies to states that require prisoners to await state habeas to raise ineffective-assistance claims. *Id.* at 17. It also applies to states, like Pennsylvania, whose procedures do not strictly bar earlier review but typically do not afford an opportunity to raise ineffective-assistance claims until state habeas. *Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

3. *The line between trial and appeal.* By its terms, *Martinez* limited its equitable exception to prisoners challenging the ineffectiveness of their *trial* counsel. 566 U.S. at 17. The Supreme Court later declined to extend *Martinez*'s exception to claims of ineffective assistance of *appellate* counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017).

*Davila* distinguished trial-counsel ineffectiveness from appellate-counsel ineffectiveness on two main grounds. First, trials are the heart of our criminal-justice system. Criminal trials, unlike appeals, are twice guaranteed by the Constitution. *Id.* at 2066 (citing U.S. Const. art. III, § 2 & amend. VI). At trial, "the stakes for the defendant are highest" and "the trial judge or jury makes factual findings that nearly always receive deference on appeal and collateral review." *Id.*

Second, the Court expected that the "number of meritorious [ineffective-assistance-of-appellate-counsel] cases [would be] infinitesimally small." *Id.* at 2070 (internal quotation marks omitted). If appellate counsel ineffectively failed to raise an argument that *had* been preserved for appeal, then the trial court would have necessarily already addressed the alleged error, ensuring that at least one court considered the claim on the merits. *Id.* at 2067. And if the error had *not* been preserved for appeal,

14

the appeal would ordinarily fail anyway. *Id.* So it would be hard to show on habeas that appellate counsel's failure to raise an unpreserved argument influenced the outcome.

In sum, *Martinez* lets prisoners who challenge the ineffective assistance of their *trial* counsel on federal habeas excuse a procedural default by their state-habeas counsel. But prisoners who want to challenge the ineffectiveness of their *appellate* counsel on federal habeas cannot turn to *Martinez.* The initial question presented here is whether post-sentencing counsel counts as trial or appellate counsel under *Martinez.*

### III. *MARTINEZ* 'S EQUITABLE EXCEPTION ENDS AT THE NOTICE OF APPEAL

Trial courts impose sentences and hear post-sentencing motions before the notice of appeal takes effect. Are these actions, after the trial or plea but before the appeal, better categorized as the province of trial counsel or appellate counsel? We hold that the boundary between trial and appellate counsel falls at the effective date of the notice of appeal. So *Martinez*'s equitable exception to procedural default extends to post-sentencing counsel.

The notice of appeal marks the traditional line between trial and appellate review. In federal court, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

So too in Pennsylvania. "[T]he general rule [is] that the filing of a notice of appeal divests the trial court of jurisdiction." *Commonwealth v. Cooper*, 27 A.3d 994, 1001 (Pa. 2011). Thus, defendants may not file notices of appeal while their post-sentencing motions are still pending. Pa. R. Crim. P. 720 cmt. *Timing*; *cf. Cooper*, 27 A.3d at 1004-08 (recognizing two exceptional circumstances that can delay the effective date of the notice of appeal, neither of which is relevant here).

The notice of appeal thus moves a proceeding from one court to another. Counsel direct their arguments to the appellate court, not the trial court. Their goal is not to change the trial judge's mind, but to persuade the appellate panel to overturn the lower court's decision. And counsel no longer build the record but parse it, crafting legal arguments that are limited by objections made below.

Sentencing and post-sentencing proceedings also differ categorically from appeals. Counsel direct sentencing and post-sentencing arguments to the same trial court, usually to the same judge. Counsel may also develop the record by proffering new evidence, which the trial court may hear at an evidentiary hearing. *See Commonwealth v. Perrin*, 108 A.3d 50, 54 (Pa. Super. Ct. 2015); *see also id.* at 51 (explaining that newly discovered evidence on appeal "must be raised promptly … and should include a request for a remand to the trial judge" (quoting Pa. R. Crim. P. 720 cmt. *Miscellaneous*)).

The state, however, asks us to draw the line when the trial court orally pronounces the defendant's sentence. It argues that this is when the error-correcting stage begins. But it cites no authority for drawing the line then. And doing so would make

little sense. To begin, the defendant's sentence is not yet fixed. "[U]ntil the trial court disposes of the [post-sentencing] motion" or the time for doing so passes, there is not yet a final judgment. *Commonwealth v. Borrero*, 692 A.2d 158, 159 & n.4 (Pa. Super. Ct. 1997). Defendants can still challenge their verdicts and sentences, and the state can still seek to modify the sentence. Pa. R. Crim. P. 720(B)(1)(a), 721. So the boundary between trial and appellate counsel naturally falls not at the oral sentence, but at the notice of appeal.

Drawing the line at the pronouncement of sentence would also prevent any court from reviewing meritorious claims like Richardson's. Many states do not entertain ineffective-assistance claims on direct appeal. And since defendants do not have a right to effective assistance on habeas, the state's line would prevent state and federal courts from ever looking at meritorious ineffective-assistance-of-post-sentencing-counsel claims.

That is the same concern that animated *Martinez*'s equitable exception for trial counsel. So under *Martinez*'s reasoning about the availability of review, we draw the line between trial and appeal at the time of an effective notice of appeal.

Because post-sentencing motions fall before the notice of appeal, Hoey qualifies as trial counsel under *Martinez*. So Richardson may pursue *Martinez*'s equitable exception for his claim that Hoey was ineffective.

17

### IV. *MARTINEZ*'S EXCEPTION APPLIES HERE

*Martinez*'s exception can excuse Richardson's procedural default of his claim that his post-sentencing counsel was ineffective—but only if he shows three things. To qualify for *Martinez*'s exception, a habeas petitioner must show (1) that the procedural default was caused by either the lack of counsel or ineffective counsel on post-conviction review; (2) that this lack or ineffectiveness of counsel was in the first collateral proceeding when the claim could have been heard; and (3) that the underlying claim of ineffective assistance of trial counsel is "'substantial.'" *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (quoting *Martinez*, 566 U.S. at 14). Richardson satisfies all three.

### A. Post-conviction counsel's ineffectiveness caused the procedural default

Brendza refused to pursue Richardson's claim that Hoey was ineffective. By failing to do so, he was ineffective. This first prong of *Cox* requires the same showing as the first prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984): deficient performance. *Preston v. Superintendent Graterford SCI*, No. 16-3095, 2018 WL 4212055, at *7 (3d Cir. Sept. 5, 2018). A showing of prejudice is also required, but that occurs at *Cox*'s third prong, discussed below.

Brendza should have seen that the sentencing judge erred in not conducting a colloquy and that Hoey erred in not challenging the judge's oversight. By not raising that issue, Brendza performed deficiently.

18

1. *The sentencing judge failed to conduct a colloquy*. The sentencing judge did not conduct a colloquy before letting Richardson waive his Sixth Amendment right to counsel at sentencing. Defendants may waive that right only after the court questions the defendant to ensure "that the waiver of counsel is voluntary, knowing and intelligent." *United States v. Salemo*, 61 F.3d 214, 219 (3d Cir. 1995), *superseded in irrelevant part by rule as recognized in United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012). The colloquy need not be a "rote dialogue" nor "as exhaustive and searching as a similar inquiry before the conclusion of trial." *Id.* at 219-20. But it must be "a searching inquiry sufficient to satisfy [the judge] that the defendant's waiver was understanding and voluntary." *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982).

Here, the sentencing judge asked no questions at all. He merely admonished Richardson that he was "foolish to terminate [Green's] services." App. 310. The failure to conduct any colloquy was a legal issue that Hoey should have raised in his post-sentencing motion.

2. *Brendza's performance was deficient*. Brendza performed deficiently on state habeas. Under *Strickland*'s first prong, Richardson must show that his lawyer "fell below an objective standard of reasonableness" under "prevailing professional norms." 466 U.S. at 688. A lawyer performs deficiently when "there is simply no rational basis to believe that counsel's failure to argue the … issue on appeal was a strategic choice." *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000) (citing as an example a case in which a lawyer "fail[ed]

to raise [an] obvious and potentially successful sentencing … issue").

As noted, the sentencing judge conducted no colloquy before letting Richardson proceed without counsel. That failure was clear and apparent on the face of the sentencing transcript. So was Hoey's failure to raise that issue. Brendza's failure to challenge Hoey's ineffectiveness cannot be justified as a tactical decision. Brendza testified that he had reviewed the record and found no error, at least not in that regard. Indeed, even after Richardson himself challenged Hoey's ineffectiveness in his pro se state-habeas filing, Brendza filed a letter arguing that Richardson's claim was meritless. Richardson had nothing to gain and much to lose by Brendza's disavowing his claim. By missing this substantial, obvious issue, Brendza performed deficiently.

### B. Brendza was ineffective in Richardson's first collateral-review proceeding

Brendza failed to raise the issue in his PCRA (state-habeas) petition. That was Richardson's first collateral-review opportunity to raise the claim. So Richardson has satisfied the second prong of *Cox* as well.

### C. Richardson's underlying claim of trial-counsel ineffectiveness is substantial

Under the final *Cox* prong, Richardson must show that his underlying claim of Hoey's ineffectiveness is "substantial." 757 F.3d at 119 (quoting *Martinez*, 566 U.S. at 14). In other words, he must show that "the claim has some merit," as required for a certificate of appealability. *Id.* A claim has merit

so long as "reasonable jurists could debate" its merits, or it "deserve[s] encouragement to proceed further." *Preston*, 2018 WL 4212055, at *8 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Though *Strickland*'s two-step analysis is a guide, we must "remain mindful that the 'substantiality' inquiry 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Id.* And Richardson need show only that his ineffective-assistance claim against Hoey, his *trial* counsel, is substantial. This proof of substantiality is also enough to show prejudice resulting from the ineffectiveness of Brendza, his *state-habeas* counsel. He need not make any additional showing of prejudice, as *Strickland* would require. *See Workman v. Superintendent Albion SCI*, No. 16-1969, 2018 WL 4324238, at *5-6 (3d Cir. Sept. 11, 2018).

So substantiality is a notably lower standard than the proof of prejudice required by *Strickland*'s second prong. *Id.* at *5. In a case with a less-developed factual record, a petitioner could qualify for the *Martinez* exception and possibly an evidentiary hearing even if he did not yet have enough evidence to prove prejudice under *Strickland*.

Here, Richardson's underlying ineffective-assistance claim is substantial. It is more than arguable that he had a right to effective post-sentencing counsel. (In the next part, we conclude that he did indeed have that right.) And as explained above, the sentencing judge failed to conduct a conduct a colloquy to ensure that Richardson's waiver of counsel at sentencing was knowing and voluntary. That error was apparent on the face of the record, but Hoey did not pursue it. Hoey performed deficiently.

Because Hoey's deficiency was "clearly substandard under the first prong of *Strickland*, we need not concern ourselves with the prejudice prong of *Strickland* in order to satisfy *Martinez* and excuse the procedural default." *Preston*, 2018 WL 4212055, at *8 (suggesting but not deciding whether a less-clear case of deficient performance might require more proof of prejudice). So Richardson satisfies the third and final prong of *Cox* as well.

To prevail on the merits of his habeas claim, Richardson must go on to show that his post-sentencing counsel, Hoey, was ineffective under the full *Strickland* test. But before he can do so, he must first show that he had a constitutional right to post-sentencing counsel at all.

## V.  RICHARDSON HAD A RIGHT TO COUNSEL AT THE POST-SENTENCING STAGE

Richardson had a Sixth Amendment right to counsel post-sentencing. That is the basis for his substantial ineffective-assistance-of-post-sentencing-counsel claim. The Supreme Court has recognized that the Sixth Amendment guarantees a "right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004). That right extends beyond trial to sentencing. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). But the Court recently declined to decide whether there is a right to counsel to file a post-sentencing motion. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013). And we have never addressed the issue.

We now hold that, in Pennsylvania state court, post-sentencing motions are a critical stage under the Sixth Amendment. So defendants have a right to counsel at that stage.

## A. Critical stages

The Sixth Amendment guarantees a defendant "the Assistance of Counsel for his defence" "[i]n all criminal prosecutions." U.S. Const. amend. VI. But the right is limited to the critical stages of the prosecution—those when the defendant faces "significant consequences" and "the guiding hand of counsel" is "necessary to assure a meaningful 'defence.'" *Bell v. Cone*, 535 U.S. 685, 696 (2002); *Powell v. Alabama*, 287 U.S. 45, 69 (1932); *United States v. Wade*, 388 U.S. 218, 225 (1967).

Many pretrial proceedings count as critical stages, because courts need defense counsel to ensure the reliability of trial verdicts. *See, e.g.*, *Estelle v. Smith*, 451 U.S. 454, 471 (1981) (pretrial psychiatric examination); *Wade*, 388 U.S. at 236-37 (pretrial lineup); *Massiah v. United States*, 377 U.S. 201, 206 (1964) (post-indictment interrogation); *Hamilton v. Alabama*, 368 U.S. 52, 53 (1961) (arraignment).

On the other hand, pretrial steps that do not turn on lawyerly knowledge or skills are not critical stages. So, for instance, defendants have no right to counsel when police show witnesses photo arrays. *United States v. Ash*, 413 U.S. 300, 317-18 (1973). Because photo identifications involve no adversarial confrontation or technical legal knowledge, defendants do not need legal expertise then. *Id.* at 313, 318.

The right to counsel protects more than just trial verdicts. It also protects plea bargaining, in part because poor bargaining can lead to heavier sentences and deportation. *Lafler*, 566 U.S. at 163-66; *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). And it protects sentencing because "'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler*, 566 U.S. at 165 (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). Defendants have a right to counsel to protect them from over-punishment as well as from wrongful conviction.

The right to counsel at sentencing also helps to preserve legal rights for review. For instance, in *Mempa v. Rhay*, the Supreme Court reviewed Washington's deferred-sentencing procedure, in which defendants faced a sentencing judge only after they violated a term of probation. 389 U.S. 128, 135 (1967). It held that deferred sentencing was a critical stage because "certain legal rights may be lost if not exercised at this stage." *Id.* at 135. If defendants lacked counsel then, the Court noted, they could lose their right to appeal. *Id.* at 136.

**B. In Pennsylvania, post-sentencing motions are a critical stage**

The critical-stage inquiry may vary from state to state, depending on how states choose to configure their criminal procedures. Pennsylvania courts treat Pennsylvania's post-sentencing, pre-appeal motions as a critical stage. *Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa. Super. Ct. 2011) (explaining that defendants are "constitutionally entitled to counsel" during "the post-sentence and direct appeal period"); *Commonwealth*

*v. Dozier*, 439 A.2d 1185, 1190 (Pa. Super. Ct. 1982) (recognizing the right to counsel at sentence-reconsideration hearings). Though these state decisions do not bind us, we agree with them.

In Pennsylvania, defendants may face severe consequences if they fail to file post-sentencing motions. These motions give trial judges a second chance to review their decisions before appeal, and even to admit new evidence. Pa. R. Crim. P. 720(C). Some motions are optional. If a defendant raised an issue before or at trial, that issue is preserved for appeal even without a post-sentencing motion. *Id.* R. 720(B)(1)(c). But motions addressing the "discretionary aspects of a sentence," like motions to reconsider or modify the sentence, must be raised at or after sentencing. *Commonwealth v. Jarvis*, 663 A.2d 790, 791-92 (Pa. Super. Ct. 1995). "[C]ounsel must carefully consider whether the record created at the sentencing proceeding is adequate," or else "the issues may be waived" on appeal. Pa. R. Crim. P. 720 cmt. *Miscellaneous*.

In short, in Pennsylvania, defendants need counsel's legal expertise and skills to protect their right to challenge their sentences post-sentencing. So the Sixth Amendment requires effective counsel at that critical stage.

## VI.  RICHARDSON'S POST-SENTENCING-COUNSEL CLAIM IS PROPERLY BEFORE US

Next, the state asserts that Richardson did not preserve his claim. But he did. This is true particularly because we must read pro se pleadings charitably, especially when litigants are imprisoned. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)

(per curiam); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013).

Richardson's habeas petition "specif[ied] all the grounds for relief available to the petitioner" and "state[d] the facts supporting each ground." Rules Governing § 2254 Cases, R. 2(c); *accord Mayle v. Felix*, 545 U.S. 644, 655 (2005). In his federal petition, Richardson's Claim J expressly challenged the trial court's failure to "perform[ ] an in depth on the record colloquy when petitioner released his retained counsel during sentencing." Am. Fed. Habeas Pet. Mem. 3. Claim I challenged Green's "ineffective[ness] [in] abandoning his client during the sentencing phase." *Id.* Claims M and N challenged Hoey's and Brendza's failure to find and preserve meritorious issues. *Id.* at 3-4.

Read together with Claim J, Richardson's ineffective-counsel claims include counsel's failure to challenge the trial judge's lack of questioning. Richardson even raised the collective effect of "layered ineffective assistance of counsel, prosecutorial misconduct, and judicial error." *Id.* at 2. And his Rule 60(b) motion reiterated his layered-ineffectiveness claim.

The state's only response is that Richardson's pro se pleadings referred to Hoey as appellate counsel, not post-sentencing counsel. But that labeling is not dispositive. Regardless of the labeling, the District Court and the state were both on notice of Richardson's claim.

26

## VII. RICHARDSON LACKED EFFECTIVE ASSISTANCE OF COUNSEL POST-SENTENCING

To recap: Richardson qualifies for *Martinez*'s exception to procedural default. He had a right to counsel post-sentencing. And he has preserved his claim. All that remains is to consider the merits of Richardson's underlying claim that his post-sentencing counsel was ineffective. So now, Richardson must show that Hoey was ineffective for not raising the trial court's failure to conduct a colloquy before letting him proceed without counsel on the second day of his sentencing.

He has done so. Hoey was ineffective, and Richardson suffered prejudice, because Hoey did not challenge the sentencing judge's failure to question Richardson.

At this stage, Richardson must satisfy the full *Strickland* standard, not the abridged version used at the *Martinez* stage. To prove ineffective assistance of counsel, Richardson must show both that Hoey performed deficiently and that, as a result, Richardson suffered prejudice. *Strickland*, 466 U.S. at 687. Both prongs are satisfied here.

### A. Deficient performance

As explained in Part IV.C, Hoey's post-sentencing performance was deficient. The sentencing judge had failed to conduct a colloquy to ensure that Richardson had knowingly and voluntarily waived his right to counsel at sentencing. That error was apparent. Hoey should have raised the issue, but he never even saw it.

## B. Prejudice

Richardson must also prove that Hoey's deficient performance prejudiced him. *Strickland*, 466 U.S. at 688. He has.

Richardson asserts that we may presume prejudice because the sentencing judge's error was structural. Structural errors include completely denying counsel to a defendant at a critical stage. *United States v. Cronic*, 466 U.S. 648, 659 (1984). "[W]e have characterized defective waivers [of counsel] as structural errors." *United States v. Booker*, 684 F.3d 421, 428 (3d Cir. 2012). On the other hand, Richardson did not completely lack counsel throughout sentencing. He had Green's representation on the first day of sentencing, though not the second.

We need not decide whether the error was structural. Regardless, it was prejudicial. The District Court disagreed, reasoning that the sentencing judge would have imposed the same sentence anyway. *Richardson*, 2015 WL 9273135, at *15. It stressed that the prosecution adduced no more evidence or testimony on the second day of sentencing, so "there was nothing left for the trial court to do but impose its sentence." *Id.* But that is not the correct test.

The test of prejudice is not whether the judge would have imposed a different sentence, but "whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal" or post-sentencing motion. *Mannino*, 212 F.3d at 844. Had Hoey challenged the failure to conduct a colloquy, either on appeal or by post-sentencing motion, the

proper remedy would have been to order a new sentencing hearing. So his failure prejudiced Richardson.

## VII. REMEDY

Richardson has navigated each twist of the habeas labyrinth. His ball of thread leads past *Martinez*'s equitable exception, past Brendza's rejection of his argument, past Hoey's oversight, to the sentencing judge's colloquy at the heart of the maze. So Richardson has overcome every hurdle and we may review the merits. *See Bey v. Superintendent Greene SCI*, 856 F.3d 230, 244 (3d Cir. 2017). Because the state court did not review the merits, we review de novo. *Id.* at 236.

For the reasons discussed above, Richardson had a Sixth Amendment right to counsel on the second day of sentencing. But the sentencing judge let him proceed pro se without first questioning him to ensure that he was intelligently and voluntarily waiving that right. And Hoey provided ineffective assistance by not challenging that error post-sentencing and preserving it for appeal and habeas corpus. Hoey's error prejudiced Richardson. So we will reverse and remand for the District Court to grant Richardson's writ of habeas corpus, limited to ordering a new sentencing hearing.